## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

HEADWATERS, LLC, by and through )
its managing partner, MASON HEAD, )
                                )
        Plaintiff, )
                                )
v.                              )         CA 13-00291-CG-N
                                )
DAWES LAKE, LLC and WAL MART )
STORES, INC., )
                                )
        Defendants. )

## REPORT AND RECOMMENDATION

In this case, removed from the Circuit Court of Mobile County, Alabama on May 31, 2013 (*see* Doc. 1),[1] Plaintiff Headwaters, LLC has filed a motion the Court interprets as one to remand (Doc. 17),[2] which has been referred to the undersigned

---

[1]      Defendant Dawes Lake, LLC filed a notice of consent to removal (Doc. 2) and motion to dismiss (Doc. 3) the same day. Defendant Wal-Mart Stores, Inc. filed its own motion to dismiss (Doc. 14) on June 14, 2013.

[2]      As the undersigned observed, in taking the motion to remand under submission, "[w]hile two motions to dismiss (Docs. 3 and 14) are pending,

> [t]his Court's analysis [must] begin[] with the threshold jurisdictional question raised by [the motion to remand]. Absent federal jurisdiction, this Court lacks the power to decide [the] pending Motion[s] to Dismiss, and must immediately remand this action to state court without reaching the question of whether Plaintiff[ has] stated cognizable claims against Defendants. Thus, the Court must first determine whether this action was properly removed from state court.

*Wilks v. Callahan*, Civil Action No. 08–638–CG–M, 2009 WL 2243702, at *3 (S.D. Ala. July 24, 2009) (citing *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000); *University of S. Ala. v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999)); *see also Klempner v. Northwestern Mut. Life Ins. Co.*, 196 F.Supp.2d 1233, 1242-43 (S.D. Fla. 2001) ("Although a motion to dismiss is currently pending in this Court [ ], 'a federal court must

United States Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2. Consistent with the submission order (Doc. 18), Removing Defendant Wal-Mart filed its opposition (Doc. 22; *see also* Docs. 23-29 (exhibits in support)) on July 2, 2013; but the deadline for reply, July 10, 2013, passed without the plaintiff making such a filing.

After consideration of the pleading, and for the reasons explained herein, it is **RECOMMENDED** that the motion to remand (Doc. 17) be **GRANTED** and that this case be **REMANDED** to the Circuit Court of Mobile County, Alabama.

## I. Background

The applicable facts as they relate to this Court's jurisdiction are discussed in the undersigned's analysis. But for preliminary purposes, the plaintiff, Headwaters, LLC, an Alabama citizen (*compare* Doc. 1, ¶ 6 *and* Doc. 1-2, *with* Doc. 20),[3] filed its lawsuit, asserting state law claims related to property damage (*see generally* Doc. 1-1) against two named defendants, Wal-Mart Stores, Inc., a citizen of Delaware and Arkansas (*see* Doc. 1, ¶ 7), and Dawes Lake, LLC, a citizen of Alabama (*see id.*, ¶¶ 5, 9), and several fictitious defendants[4] in Mobile County

---

remand for lack of subject matter jurisdiction notwithstanding the presence of other motions pending before the court.'") (quoting *University of S. Ala.*, 168 F.3d at 411).

(Doc. 18 (staying briefing as to the motions to dismiss).)

[3] The two members of the LLC both appear to be residents of Alabama (*see id.*), and it is presumed "that the state in which a person resides at any given time is also that person's domicile[,]" *Audi Performance & Racing, LLC v. Kasberger*, 273 F. Supp. 2d 1220, 1226 (M.D. Ala. 2003) (quoting *McDonald v. Equitable Life Ins. Co. of Iowa*, 13 F. Supp. 2d 1279, 1281 (M.D. Ala. 1998) (citations omitted)).

[4] The removal statute "requires that fictitious 'named' parties be disregarded

Circuit Court on April 24, 2013 (*see* Doc. 1-1 at 1). The action was timely removed to this Court on the basis of diversity jurisdiction.

## II. Analysis

### A. As the removing defendant, Wal-Mart must prove that this Court has subject-matter jurisdiction.

"Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a)), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000); *accord City of Vestavia Hills v. General Fid. Ins. Co.*, 676 F.3d 1310, 1313 n.1 (11th Cir. 2012). And a federal court may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). Nevertheless, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly . . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *University of S. Ala.*, 168 F.3d at 411; *cf. D.M.C. Enters. Inc. v. Best McAllister, LLC*, Civil Action No. 10-00153-CB-N, 2010 WL 3039477, at *2 (S.D. Ala. Aug. 4, 2010) ("Because it is conferred by statute, the right

---

for purposes of diversity jurisdiction." *Walker v. CSX Transp., Inc.*, 650 F.3d 1392, 1395 n.11 (11th Cir. 2011) (citing 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."); *Wilson v. General Motors Corp.*, 888 F.2d 779, 782 n.3 (11th Cir. 1989) (discussing the significance of the same); *Universal Communication Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 426 n. 10 (1st Cir. 2007) ("The presence of John Does does not destroy diversity jurisdiction in cases removed to federal court.")).

of removal is strictly construed to limit federal jurisdiction." (citing *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996))); *White v. Wells Fargo Home Mortgage*, Civil Action No. 1:11–cv–408–MHT, 2011 WL 3666613, at *3 (M.D. Ala. Aug. 22, 2011) (a federal court is "obligat[ed] to narrowly construe removal statutes"; this obligation necessarily "requires that uncertainties be 'resolved in favor of remand'" (quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994))).

Therefore, Wal-Mart must establish the propriety of removal under section 1441 and, for that reason, "bears the burden of establishing the existence of federal jurisdiction[,]" *Brown v. Kabco Builders, Inc.*, Civil Action 07-0099-WS-C, 2007 WL 841690, at *1 (S.D. Ala. Mar. 15, 2007) (citing *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002)), which requires that Wal-Mart both establish complete diversity—that all plaintiffs are diverse from all defendants, *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citation omitted); *accord Auto-Owners Ins. Co. v. Great Am. Ins. Co.*, 479 Fed. App'x 228, 232 n.3 (11th Cir. June 21, 2012) (per curiam)—and also show that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement, *see Fitzgerald v. Besam Automated Entrance Sys.*, 282 F. Supp. 2d 1309, 1314 (S.D. Ala. 2003).

Wal-Mart has made a showing sufficient to establish—and the plaintiff does not contest—that the amount in controversy exceeds the jurisdictional minimum (*see* Doc. 1, notice of removal, ¶¶ 16-19).  The sole task for the Court, then, is to

determine whether the non-diverse (or resident) defendant, Dawes Lake, LLC, was fraudulently joined to defeat this Court's jurisdiction.

**B.     The Eleventh Circuit recognizes three ways to prove that a resident defendant has been joined to defeat federal diversity jurisdiction.**

### 1.     Traditional fraudulent joinder analysis.

A removing defendant can establish complete diversity of citizenship by proving that the non-diverse defendant, purportedly a resident of the same state as the plaintiff, has been fraudulently joined in an effort by a plaintiff to defeat federal diversity jurisdiction. *See Tapscott*, 77 F.3d at 1359 ("An action may nevertheless be removable if the joinder of non-diverse parties is fraudulent."); *Sellers v. Foremost Ins. Co.*, 924 F. Supp. 1116, 1117 (M.D. Ala. 1996) ("The citizenship of a resident defendant fraudulently joined should not be considered by a court for the purpose of determining diversity jurisdiction."). A removing defendant's burden in this regard is "a heavy one." *See Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). In *Henderson v. Washington National Insurance Co.*, 454 F.3d 1278, (11th Cir. 2006), the Eleventh Circuit set forth the following standard of review:

> When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court. The plaintiff is said to have effectuated a "fraudulent joinder," *see Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997), and a federal court may appropriately assert its removal diversity jurisdiction over the case. A defendant seeking to prove that a co-defendant was fraudulently joined must demonstrate either that: "(1) there is no possibility the plaintiff can establish a cause of action against the [non-diverse or] resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the

resident defendant into state court." *Id.* The defendant must make such a showing by clear and convincing evidence. *See Parks v. N.Y. Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962)[.[5]]

*Id.* at 1281 (footnotes omitted); *accord Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 Fed. App'x 888, 890 (11th Cir. May 31, 2011) (per curiam) (quoting *Crowe* and stating the same two alternative methods to show fraudulent joinder); *Roberson v. BancorpSouth Bank, Inc.*, Civil Action No. 12–716–CG–N, 2013 WL 2896840, at *3 (S.D. Ala. June 13, 2013) (same).

## 2. Fraudulent misjoinder.

The Eleventh Circuit has recognized a third way to show fraudulent joinder. In *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), it held that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action"; this concept is commonly referred to as fraudulent misjoinder (and, sometimes, procedural misjoinder). *Id.* at 1360 (recognizing, "A defendant's 'right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.'" (quoting *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)); footnote omitted). Importantly, however, the court in *Tapscott* did "not hold that mere misjoinder is fraudulent joinder." *Id.* ("agree[ing] with the district court that Appellants' attempt to join these parties is so ***egregious*** as to constitute

---

    [5]    The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981. *See id.* at 1209.

fraudulent joinder" (emphasis added))[6]; *see also Ash v. Providence Hosp.*, Civil Action No. 08-0525-WS-M, 2009 WL 424586, at *8-9 (S.D. Ala. Feb. 17, 2009) ("[T]he law of this Circuit is clear that not every misjoinder amounts to fraudulent joinder; rather, only in egregious circumstances does misjoinder constitute fraudulent joinder."); *Walton v. Tower Loan of Miss.*, 338 F. Supp. 2d 691, 695 (N.D. Miss. 2004) ("It is thus apparent that, for *Tapscott* to be applicable, this court would be required to find a level of misjoinder that was not only improper, but grossly improper. . . . Clearly, this is a difficult burden for defendants to meet.").

And while the failure "to define egregious misjoinder as opposed to mere misjoinder has left courts in its wake either struggling to define the term, or[, as to

---

[6]    As explained by the court in *Austin v. Ameriquest Mortgage Co.*, 510 F. Supp. 2d 1218 (N.D. Ga. 2007),

> In *Tapscott*, the Eleventh Circuit held that the misjoinder of two separate classes—an "automobile" and "merchant" class—constituted a fraudulent joinder because defendants in the automobile class had "no real connection with the controversy" involving the merchant class.   77 F.3d at 1360. Initially, Tapscott filed a class action in state court against the "automobile" class regarding the sale and financing of automobile service contracts. Subsequently, Tapscott amended the complaint to add a claim against a "merchant" class concerning the sale of retail extended service contracts. *Id.* at 1354.  At the district court level, plaintiff alleged that the classes could be joined because they both engaged in similar business practices.  *Id.* at 1360. The district court rejected this argument, and the Eleventh Circuit affirmed. The Eleventh Circuit noted that the alleged transactions involved in the "automobile" class were "wholly distinct" from the alleged transactions involved in the "merchant" class, and the only similarity between the class allegations were that both classes violated a particular provision of the Alabama Code.  *Id.*  Thus, the court found the attempt to join these parties "so egregious" as to constitute a fraudulent joinder.  *Id.*

*Id.* at 1224-25 (further noting that, in *Austin*, "plaintiff's claims against [the resident defendant] have a real and substantial connection with the controversy[,]" and, "[g]iven the nature of plaintiff's claims against [both defendants], this litigation is likely to contain common questions of law and fact"; thus "conclud[ing] that plaintiff did not fraudulently jon [the resident defendant]").

courts outside this Circuit,] rejecting the theory of misjoinder as an improper jurisdictional inquiry," *Yates v. Medtronic, Inc.*, No. CA 08-0337-KD-C, 2008 WL 4016599, at *7 n.4 (S.D. Ala. Aug. 26, 2008) (collecting cases), in *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284 (11th Cir. 1996), the Eleventh Circuit provided a framework under which to analyze *Tapscott* fraudulent misjoinder.[7]

As explained by the court in *Bollea v. Clem*, --- F. Supp. 2d ----, 2013 WL 1296076 (M.D. Fla. Mar. 28, 2013),

> [u]nder *Triggs*, if a plaintiff's joinder of defendants satisfies the permissive joinder requirements of Federal Rule of Civil Procedure 20(a)(2), then the parties are not fraudulently misjoined. 154 F.3d at 1289. Rule 20(a)(2) allows defendants to be joined if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and "any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2)(A)-(B). To determine whether claims arise from the same "series of transactions or occurrences" under Rule 20(a)(2), courts in the Eleventh Circuit apply the "logical relationship" test. *See Smith v. Trans–Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) (citing *Republic Health Corp. v. Lifemark Hosps. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985)). "Under this test, a logical relationship exists if the claims rest on the same set of facts or the facts, on which

---

[7]     *See, e.g., id.* at 1288, 1290 ("[T]he joinder of Crump fits comfortably within the rule for permissive joinder of parties as provided in Rule 20 of the Federal Rules of Civil Procedure. . . . In the instant case, the members of the putative plaintiff class assert such rights against Omni, Crump and the other unnamed dealers arising out of the series of automobile lease transactions allegedly orchestrated by Omni, which give rise to common questions of law and fact. Of particular importance for this case, Rule 20 specifically provides that '[a] plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.' FED. R. CIV. P. 20. In other words, the fact that a great many of the members of the putative plaintiff class can seek no relief against one of the defendants, Crump, would be no obstacle to the permissive joinder of Crump under Rule 20. Accordingly, we readily conclude that the joinder of defendant Crump satisfies the standards of Rule 20. . . . Unlike the situation in *Tapscott*, the parties in the instant case have been properly joined, in full compliance with the standards set out in Rule 20.")

one claim rests, activate additional legal rights supporting the other claim." *Id.* (citing *Republic Health*, 755 F.2d at 1455). In other words, "there is a logical relationship when 'the same operative facts serve as the basis of both claims.'" *Republic Health*, 755 F.2d at 1455 (quoting *Plant v. Blazer Fin. Servs., Inc.*, 598 F.2d 1357, 1361 (5th Cir. 1979)). "[O]nly claims that do not arise from common operative facts are not logically related." *Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1381 n.1 (11th Cir. 1991). The logical relationship standard is a "loose" one that "permits a broad realistic interpretation in the interest of avoiding a multiplicity of suits." *Plant*, 598 F.2d at 1361 (internal quotations omitted). Joinder rules, including Rule 20(a)(2), are construed generously towards "entertaining the broadest possible scope of action consistent with fairness of the parties." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966).

*Id.* at *3 (some citations modified)[8]; *see also Colson v. Joe East Heating & Air Conditioning, Inc.*, No. CV–12–J–3839–S, 2012 WL 6186176, at *3 (N.D. Ala. Dec. 10, 2012) (observing that "*Tapscott*'s logic was drawn from the rules for permissive joinder as set forth in Rule 20(a)" and that, "[u]nder Alabama law, courts must consider each case individually to determine whether claims are logically related, therefore allowing 'all reasonably related claims for relief by or against different parties to be tried in a single proceeding.'" (quoting *Atchison v. Woodmen of the World Ins. Soc'y*, 982 F. Supp. 835, 839 (S.D. Ala. 1997) (internal citations omitted))); *Stone v. Zimmer, Inc.*, No. 09–80252–CIV, 2009 WL 1809990, at *2 (S.D. Fla. June 25, 2009) (defining procedural misjoinder as "a purposeful attempt to defeat removal by joining together claims against two or more defendants where the presence of one would defeat removal, and where in reality there is no sufficient

---

[8]    Of course, joinder can still violate Rule 20 and not amount to **egregious** misjoinder under *Tapscott*. *See supra*, footnote 10.

factual nexus among the claims to satisfy the permissive joinder standard provided under Rule 20 of the Federal Rules of Civil Procedure").

> **3.    A court's fraudulent joinder inquiry is "basic" and involves only a limited "piercing of the pleadings," to determine whether a claim against the resident defendant is possible.**

In the context of fraudulent joinder, regardless which one of the three theories is being pursued, the Court is required to both evaluate the parties' factual allegations and submissions in the light most favorable to a plaintiff and resolve all uncertainties about state substantive law in favor of the plaintiff.  *See Crowe*, 113 F.3d at 1538.  And although the determination of whether a non-diverse defendant has been fraudulently joined "should be made based upon the plaintiff's pleadings at the time of removal," *Cabalceta*, 883 F.2d at 1561 (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)), a district court "can consider any submitted affidavits and/or deposition transcripts," *id.* (citing *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983) ("Both parties may submit affidavits and deposition transcripts." (citing, in turn, *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 550 (5th Cir. Unit A Dec. 1981))), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993)); *see also Abrams v. Olin Corp.*, 248 F.R.D. 283, 291 (S.D. Ala. 2007) (The "fraudulent joinder analysis is not confined to the pleadings, but may also encompass 'any affidavits and deposition transcripts submitted by the parties.'" (quoting *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005)).

Given these parameters, some courts have analogized the fraudulent joinder inquiry to that applied to a motion for summary judgment under Rule 56. *See Crowe*, 113 F.3d at 1538.

> **However,** while the analysis is similar, "the jurisdictional inquiry 'must not subsume substantive determination' . . . [and w]hen considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an **arguable** one under state law." *Crowe*, 113 F.3d at 1538. This court's authority to assess the "ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims" and it should not attempt to determine "the merits of cases that do not appear readily to be frivolous or fraudulent." *Id.* at 1541-42.

*Atwood v. Weyerhaeuser USA, Inc.*, Civil Action No. 09-0379-CG-N, 2010 WL 749337, at *5 (S.D. Ala. Feb. 26, 2010) (emphasis added); *see id.* at *6 (describing the inquiry into the plaintiffs' claims for purposes of fraudulent joinder as "basic": The court must merely decide whether the defendants have shown by clear and convincing evidence that no Alabama court could find plaintiffs' complaint[, as supplemented by their] affidavit[,] sufficient to invoke claims for nuisance, negligence, wantonness and trespass."); *Triggs*, 154 F.3d at 1287 ("The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a **possibility** of stating a valid cause of action in order for the joinder to be legitimate." (emphasis in original)); *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995) ("[I]n testing for fraudulent joinder the district court in its discretion may 'pierce the pleadings,' albeit in so doing the court should not conduct an evidentiary hearing but, based on appropriate documentation in addition to the pleadings, should instead resolve all disputed questions of fact in favor of the plaintiff.").

As *Burden* and *Atwood* make clear, in "piercing the pleadings" to determine whether a claim exists against a resident defendant, a court may not step beyond the threshold jurisdictional inquiry and wade into the merits. *See also In re Briscoe*, 448 F.3d 201, 218 (3d Cir. 2006) ("Assuming a district court can 'pierce the pleadings' to determine whether a plaintiff has asserted a colorable claim against the non-diverse defendant, 'that inquiry is far different from the summary judgment type inquiry made by the district court here.' The district court, 'in the guise of deciding whether the joinder was fraudulent, stepped from the threshold jurisdictional issue into a decision on the merits' . . . ." (discussing and quoting *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 112-13 (3d Cir. 1990) (internal citations omitted))); *cf. Eckhart v. DePuy Orthopaedics, Inc.*, Case No. 2:03-cv-1063, 2004 WL 524916, at *2-4 (S.D. Ohio Mar. 3, 2004) ("Because a factual attack on the well-pleaded allegations of the plaintiff's complaint resembles an effort to obtain summary judgment on the merits, courts have struggled with the appropriate legal standard to be applied in such a situation.").

**C.    Wal-Mart has failed to show that the plaintiff's claims against Dawes Lake are not possible, which means that the Court must consider Dawes Lake's citizenship for purposes of determining jurisdiction.**

Wal-Mart appears to give three reasons why the joinder of Dawes Lake is fraudulent. First, in its notice of removal (*see* Doc. 1, ¶ 12), Wal-Mart alleges "fraudulent misjoinder." Next, as provided in the notice (*see id.*,¶ 15), and reurged in its response to the remand motion (*see* Doc. 23 at 9-10), it argues that any claims against Dawes Lake are barred by a statute of repose. Finally, in response to the

remand motion (*see id.* at 2-9), Wal-Mart recasts its "fraudulent misjoinder" argument as one under Rule 11 (*see, e.g., id.* at 3, 5 ("[I]f the fraudulent joinder inquiry revolves around facts unknown to the plaintiff (such as the origin of the stormwater that damaged plaintiff's property), the plaintiff's allegations must satisfy Rule 11 . . . . Because plaintiff has made no effort to distinguish the Wal-Mart and Dawes Lake properties from the other property 'uphill' from plaintiff's property, it has not complied with Rule 11. Plaintiff's legal justification also lacks merit, and Dawes Lake is therefore fraudulently joined.").)

While the undersigned will address each theory in turn, not one satisfies the heavy burden Wal-Mart must shoulder to demonstrate fraudulent joinder.

> 1. **Wal-Mart has not shown that Dawes Lake has been fraudulently misjoined.**

Wal-Mart's theory of fraudulent misjoinder, as stated in the notice of removal, is that it

> has no relation to Dawes Lake. Although plaintiff alleges "joint conduct[,]" that "conduct" is limited to the geographic location of defendants' property: plaintiff alleges that both defendants developed property 'uphill from the property' of plaintiff. There is no other link between Wal-Mart and Dawes Lake, and the properties are not adjacent, contiguous, or related in any way. [Further, t]he potential class of defendants in this suit is each and every property developer "uphill" from plaintiff's property. This is a haphazard and improper basis by which to join these defendants in a lawsuit, because there is no joint, several or alternative liability and the claim has no real connection to the claim against Dawes Lake. As such, Dawes Lake is fraudulently joined[,] and this lawsuit is properly removable on diversity grounds.

(Doc. 1, ¶ 12 (citation and some quotation marks omitted).)

As the proponent of fraudulent misjoinder, Wal-Mart must prove, however, that the joinder of Dawes Lake is not only improper under Rule 20, but also ***egregious***, in the same vein as *Tapscott*. First, because there is a logical relationship between the claims against them, it has not been shown that Wal-Mart and Dawes Lake are misjoined under Rule 20(a)(2). As stated above, courts in this Circuit apply the "broad" and "loose" "logical relationship" test "[t]o determine whether claims arise from the same 'series of transactions or occurrences' under Rule 20(a)(2)." *Bollea*, 2013 WL 1296076, at *3 (citations omitted). Here, the plaintiff has alleged that its property has been damaged by both Wal-Mart's construction of a facility and Dawes Lake's development of a subdivision, both uphill from its property. (*See* Doc 1-1, ¶¶ 4-7.) Thus, it appears that the plaintiff's claims against both "rest on the same set of facts[,]" *Smith*, 728 F. Supp. 2d at 1319, or, said differently, "the same operative facts serves as the basis [for] both[,]" *Republic Health*, 755 F.2d at 1455 (quoting *Plant*, 598 F.2d at 1361)—uphill developments, which have included the construction of impervious surfaces (*e.g.,* streets and parking lots) caused water from a June 2012 rain event to damage the plaintiff's property (*see* Doc. 17-1, Mason Head Aff., at 2).[9] Because the claims against both defendants arise from common operative facts, those claims are logically related. *Cf. Montgomery Ward Dev. Corp.*, 932 F.2d at 1381 n.1.

Further, for purposes of fraudulent misjoinder, because there is a logical relationship between the claims asserted against Wal-Mart and Dawes Lake, it

---

[9] The Court of course may consider such an affidavit in its fraudulent joinder inquiry. *See, e.g., Atwood*, 2010 WL 749337, at *5-6.

neither matters that more uphill property developers could have been named nor that Wal-Mart's and Dawes Lake's property is neither adjacent nor contiguous.[10] Finally and most significantly, even if the joinder of Wal-Mart and Dawes Lake somehow violates the permissive joinder rules, Wal-Mart has not shown that any such misjoinder is **_egregious_**.  Such a showing is **_required_** to prove fraudulent misjoinder under *Tapscott*.[11]

---

[10]    Mr. Head's affidavit informs the Court that, during the June 2012 rain event, the lake on the plaintiff's property "receive[d] and passe[d] through water from [Dawes Lake's] development . . . as well as water from the uphill Wal-Mart."  (Doc. 17-1 at 2.)  Thus, even if their properties are not contiguous, the defendants' liability appears tied to the same common facts.  That is sufficient to show that joinder is far from egregious.

[11]    *Compare, e.g., Heard v. American Alternative Ins. Corp.*, Civil Action No. 12–0644–WS–C, 2013 WL 593687, at *3 (S.D. Ala. Feb. 15, 2013) ("American's only proof of fraudulent misjoinder is that the state court granted its motion for severance.  American provides no explanation how this demonstrates even misjoinder, much less fraudulent misjoinder, which arises only in egregious circumstances." (citations and quotation marks omitted), *with Ash*, 2009 WL 424586 at *9 ("Even assuming that there is a misjoinder of the non-diverse defendants here, Baxter has not satisfied its heavy burden of establishing that the misjoinder was so egregious as to constitute fraudulent joinder.  Indeed, in advancing its misjoinder argument, Baxter has focused on establishing garden-variety misjoinder, without articulating how the circumstances of this case could amount to 'egregious misjoinder' as would be necessary to reach a fraudulent joinder determination under *Tapscott*."), *with Ramey v. Gilbert*, No. 5:05-CV-244 (CAR), 2005 WL 3149381, at *3-4 (M.D. Ga. Nov. 23, 2005) ("In this case, Stonebridge has not met its 'heavy' burden of proving to this Court that Plaintiffs' conduct of joining the Gilbert Defendants with Stonebridge is so egregious as to be deemed fraudulent. . . . Stonebridge merely argues that the Defendants were misjoined under Rule 20 and fails to prove that the alleged misjoinder is so egregious as to be fraudulent joinder.  In fact, Stonebridge does not even contend that Plaintiffs' misjoinder in this case is egregious.  Instead, it merely calls the misjoinder 'blatant.'  Nowhere in either its motion to sever or its response to Plaintiffs' motion to remand does Stonebridge use the word 'egregious.'  Although Stonebridge does contend that the misjoinder in this case is 'blatant,' 'blatant' misjoinder is not the equivalent of 'egregious.'"), *with In re Accutane Prods. Liab.*, 841 F. Supp. 2d 1243, 1246-47 (M.D. Fla. 2012) ("In the instant case, the Roche Defendants cannot meet the heavy burden of establishing fraudulent misjoinder with respect to Dr. Lusher.  Unlike *Tapscott*, where the claims were completely disconnected, the claims against the Roche Defendants and Dr. Lusher share a 'real connection' and the joinder of these defendants is certainly not 'egregious.'"), *with Brooks v. Paulk & Cope, Inc.*, 176 F. Supp. 2d 1270, 1277 (M.D. Ala. 2001) ("Even if, however, the Defendants in this case have been misjoined, the court cannot conclude that this misjoinder is sufficient to find that there has been fraudulent joinder in this particular

2. **Wal-Mart has not shown there is no possibility that an Alabama court would find that the plaintiff's claims against Dawes Lake are not barred, either by a statute of limitation or one of repose.**

While a statute of repose and a statue of limitation are not the same,[12] both are affirmative defenses. *See, e.g., Abrams*, 248 F.R.D. at 291 n.11 ("Of course, the statute of limitations is an affirmative defense which plaintiffs are not required to negate in their Complaint." (collecting cases)). And, certainly, "[i]f the only claims against a resident defendant are barred by [either], then there is no possibility the plaintiff can establish a cause of action against the resident defendant. In such a situation, the resident defendant is deemed to be fraudulently joined." *Bullock v. United Benefit Ins. Co.*, 165 F. Supp. 2d 1255, 1258 (M.D. Ala. 2001) (quoting *Whitlock v. Jackson Nat'l Life Ins. Co.*, 32 F. Supp. 2d 1286, 1290 (M.D. Ala. 1998) (internal quotation marks omitted)); *accord Fowler v. Provident Life & Accident Ins. Co.*, 256 F. Supp. 2d 1243, 1247-48 (N.D. Ala. 2003); *see also Riverdale Baptist Church v. Certainteed Corp.*, 349 F. Supp. 2d 943, 949 (D. Md. 2004) ("[C]ourts in

---

case. . . . [M]isjoinder must be egregious in order for there to be fraudulent joinder. Egregious misjoinder was recognized in *Tapscott*, which was a case in which two groups of plaintiffs asserted claims against different defendants that bore no factual commonality. This case does not meet that standard, as Charlie Brooks has asserted claims against both Paulk & Cope and SPX and Carquest."); *accord Walton*, 338 F. Supp. 2d at 695.

[12]    Although at least one member of the Alabama Supreme Court finds that court's common law rule of repose decisions "conflicted and confusing, . . . American jurisprudence draws a distinction between statutes of limitation and statutes of repose and recognizes that the latter run from the defendant's wrongful act or omission, not from the accrual of a cause of action . . . ." *Collins v. Scenic Homes, Inc.*, 38 So. 3d 28, 36 (Ala. 2009) (Murdock, J., concurring in part and dissenting in part); *see also id.* at 37 ("While a statute of limitations bars a cause of action if not brought within a certain time period, a statute of repose prevents a cause of action from arising after a certain period. . . . The bar of a statute of repose is absolute, whereas the bar of a statute of limitations is conditional." (quoting 54 C.J.S. LIMITATIONS OF ACTIONS § 4 (1987))).

several other circuits have held, with varying requirements of certainty, that if the statute of limitations has run on a cause of action against a non-diverse defendant, the court may—and in some jurisdictions, must—find joinder of that defendant to be fraudulent." (collecting cases)).

If a defendant invokes the running of a statute of limitation or a statute of repose to show that there is ***no possibility*** a plaintiff can establish a cause of action against the resident defendant, that defendant must prove to this Court "that no Alabama court could conclude otherwise." *Abrams*, 248 F.R.D. at 291 n.12 ("[D]efendants' unsupported contention that any 'alleged release and intrusion of mercury onto Plaintiffs' properties, undeniably occurred more than six years ago' perhaps reflects defendants' ardent hope and firm conviction as to what the evidence will show; however, they have made no evidentiary showing to meet their burden of proving that no Alabama court could conclude otherwise." (record citation omitted)); *see Wright v. American Gen. Life & Accident Ins. Co.*, 136 F. Supp. 2d 1207, 1212-13 (M.D. Ala. 2001) (relied upon heavily by Wal-Mart) ("The question before this court is not whether the rule of repose bars the Plaintiffs' claims, but whether there is any possibility that a state court would find that the Plaintiffs have stated a claim which is not barred by the rule of repose." (citing *Crowe*, 113 F.3d at 1539)); *see also Thomas v. Jim Walter Homes, Inc.*, 918 F. Supp. 1498, 1502 (M.D. Ala. 1996) ("Jim Walter does not provide the court with the dates that defendant Henry received the tax notices, and thus Jim Walter offers no proof that a claim premised on the receipt of these tax notices is untimely. The court therefore

proceeds to examine whether the Plaintiffs could possibly establish their negligence claim against defendant Henry in state court.").

Thus, for purposes of Wal-Mart's statute of repose-fraudulent joinder theory, all the Court needs to determine is **whether there is a possibility** that the claims against Dawes Lake are **not barred**, such that there is "a **possibility** [the plaintiff has] stat[ed] a valid cause of action" against Dawes Lake. *Triggs*, 154 F.3d at 1287 ("The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a **possibility** of stating a valid cause of action in order for the joinder to be legitimate." (emphasis in original)).  In this regard, *Riverdale Baptist Church* is helpful.  There, the court observed that, "[f]or the most part, [ ] successful fraudulent joinder/statute of limitations arguments occur in cases where the issue is fairly easy to determine, either from the face of the complaint or with resort to limited additional evidence, while courts facing more ambiguous factual situations reject such arguments."  *Id.*; *see, e.g., Edwards v. Pipewelders Marine, Inc.*, Civil Action No. 96–3630, 1997 WL 40622, at *1 (E.D. La. Jan. 31, 1997) ("In any event, as the complained of conduct took place in 1989, **it is clear from the face of the pleading** that any redhibitory claim is barred by the statute of limitations.  Under the circumstances, there is no possibility that plaintiff would be able to establish a cause of action against Billy's in state court.  As such, it is the finding of the Court that there is complete diversity between the parties." (emphasis added)); *see also Riverdale Baptist Church*, 349 F. Supp. 2d at 950 (recommending

"a limited 'piercing of the pleadings' for fraudulent joinder in statute of limitation cases"); *accord McGinty v. Player*, 396 F. Supp. 2d 593, 598 (D. Md. 2005).[13]

The statute of repose Wal-Mart relies on concerns actions against architects, contractors, and engineers, *see generally* Ala. Code § 6-5-220, *et seq.*, and was upheld as constitutional by the Alabama Supreme Court in *Baugher v. Beaver Construction Co.*, 791 So. 2d 932 (Ala. 2000), in which the Supreme Court noted,

> Buildings are unique in that typically they are intended to endure indefinitely if not permanently.  Without this statute, architects, builders, and engineers would remain subject to liability until they die or, indeed, for some months after they have died.  The construction statute of repose bears a substantial relationship to the eradication or amelioration of this potentially perpetual liability as well as the evils specifically found by the Legislature.  Therefore, [it is] a valid exercise of police power . . . .

*Id.* at 937 (citations omitted).

Among other actions, § 6-5-221(a) applies to

---

[13]     Relatedly, remand is favored where the applicable state substantive law is unsettled.  *See, e.g., Wright*, 136 F. Supp. 2d at 1212 (As the Eleventh Circuit explained in *Crowe*, if there is a conflict in the state substantive law, in evaluating the Plaintiffs' claims under fraudulent joinder analysis, 'any ambiguity or doubt about the substantive state law favors remand to state court.'" (quoting 113 F.3d at 1539)); *see also Legg v. Armstrong Int'l Inc.*, MDL No. 875, 2012 WL 7761497, at *1 (E.D. Pa. Nov. 29, 2012) (Because "[n]o appellate court in Alabama has addressed the statute of repose[, § 6-5-221,] in the context of an asbestos claim[,]" the court was "not able to discern whether Alabama, like many states, deems the statute inapplicable to claims arising from latent illnesses, such as asbestos-related diseases.  Moreover, Alabama law has not determined whether the asbestos exposure at issue in this case constitutes a 'defect' or 'deficiency' such that the statute could potentially be applicable.  As such, Alabama law surrounding this statute is not settled.  Rather than predict what the Supreme Court of Alabama would do in deciding the applicability of the statute of repose, the Court will also remand this issue for determination by the transferor court." (citation omitted)); *Salomon v. Massachusetts Mut. Life Ins. Co.*, No. 3:11–cv–01007–HU, 2012 WL 1079843, at *2 (D. Or. Mar. 30, 2012) ("Given the fraudulent joinder standard at issue here, it is unnecessary for me to determine the applicability of [Oregon's statute of repose] to this action.  Suffice it to say, any failure to state a claim against Mr. Miller due to this repose statute is not 'obvious' under 'settled' Oregon law.  That conclusion answers the fraudulent joinder question."  (footnote omitted)).

> [a]ll civil actions in tort, contract, or otherwise . . . against builders who constructed, or performed or managed the construction of, an improvement on or to real property designed by and constructed under the supervision, administration, or observation of an architect or engineer, or designed by and constructed in accordance with the plans and specifications prepared by an architect or engineer, for the recovery of . . . [d]amage to real or personal property caused by any such defect or deficiency.

*Id.* Under that section, such actions

> shall be commenced within two years next after [it] accrues or arises, and not thereafter. [And] no relief can be granted on any cause of action which accrues or would have accrued more than seven years after the substantial completion of construction of the improvement on or to the real property, and any right of action which accrues or would have accrued more than seven years thereafter is barred, except where prior to the expiration of such seven-year period, the architect, engineer, or builder had actual knowledge that such defect or deficiency exists and failed to disclose such defect or deficiency to the person with whom the architect, engineer, or builder contracted to perform such service.

*Id.*

The statute does not apply (or apply without exception) in two instances: (1) where an "action against any architect, engineer, or builder who, at the time the cause of action accrues or arises, is the owner or is in actual possession or control as owner, tenant, or otherwise of the improvement[,]" *id.*, § 6-5-221(d); and (2) "[w]hen the architect, engineer, or builder has been the owner or the person in actual possession or control, in whatever capacity, of the improvement during the seven-year period after the substantial completion of construction of the improvement on or to real property, but not at the time the cause of action accrues or arises," *id.,* § 6-5-221(e) (providing that in such an instance, "the time of the ownership, possession, or control shall not be computed as a portion of the time necessary to create a bar

for the action or of relief by virtue of the passage of time after the substantial completion of the improvement").

As to the application of the statute of repose to any claims against Dawes Lake, Wal-Mart relies on the Affidavit of Ben Tom Roberts (Doc. 3-1), provided in support of Dawes Lake's motion to dismiss (Doc. 3), filed May 31, 2013, the day this case was removed to federal court. Mr. Roberts, the "manager for Dawes Lake, LLC from its formation until its dissolution on October 31, 2011" (Doc. 3-1, ¶ 2), offers the following testimony:

- "Dawes Lake, LLC developed two subdivisions in west Mobile County, Alabama between 1998 and 2005 – Dawes Lake Estates and Dawes Lake Trace. These two subdivisions are the only projects Dawes Lake, LLC developed during its existence.

- "Dawes Lake, LLC began development of Dawes Lake Estates in or around June of 1998. There were a total of four additions constructed at Dawes Lake Estates. The fourth and final addition to Dawes Lake Estates was substantially completed and recorded by January 23, 2003. All of Dawes Lake, LLC's development work at Dawes Lake Estates was substantially completed on or before January 23, 2003.

- "Development at Dawes Lake Trace was substantially completed and recorded on or before December 12, 2005. All of Dawes Lake, LLC's development work at Dawes Lake Trace was substantially completed on or before December 12, 2005.

- "All development work performed by Dawes Lake, LLC[] was performed while acting in conformance with the instructions and under the supervision of an engineer or engineers."

(*Id.*, ¶¶ 3-6.)

Wal-Mart's (and Dawes Lake's) theory is, then, that the latest of the dates for substantial completion of Dawes Lake's two developments, December 12, 2005, is the operative date for determining whether the plaintiff's claims against Dawes

Lake are barred by § 6-5-221(a).  (*See, e.g.,* Doc. 1, ¶ 15 ("Plaintiff's claims against Dawes Lake were forever barred by Alabama's statute of repose as of December 12, 2012, seven years following the substantial completion of its last development project in that area, and[, accordingly,] plaintiff's complaint fails to state a claim under state law against Dawes Lake for that reason.").)  This may be true, and the defendants may ultimately prevail on this affirmative defense.  But, for purposes of fraudulent joinder, Wal-Mart has the "burden of proving that no Alabama court could conclude otherwise[,]" *Abrams*, 248 F.R.D. at 291 n.12, and there are several reasons why the undersigned cannot say that Wal-Mart's showing in this Court meets its burden.

First, there is no evidence to show that Dawes Lake was, during the applicable time period, a "builder" as defined in the statute, which defines a "builder" to be "[a]ny individual, partnership, firm, or corporation that constructed, or performed or managed the construction of, an improvement, or any portion thereof, on or to real estate, ___***and at the time of the construction was licensed as a general contractor in the State of Alabama***___."  ALA. CODE § 6-5-220(a) (emphasis added).  The only evidence as to Dawes Lake's status (Mr. Roberts's affidavit) is set out in full above.  Nowhere therein is there proof that Dawes Lake, LLC, "at the time of the construction [of Dawes Lake Estates and Dawes Lake Trace,] was a licensed general contractor in the State of Alabama."  And unfortunately for the defendants, one of the few Alabama Supreme Court cases to discuss § 6-5-220(a) directly supports such an outcome.

In *Burkes Mechanical, Inc. v. Ft. James-Pennington, Inc.*, 908 So.2d 905 (Ala. 2004), Burkes sought to invoke § 6-5-221(a)'s two-year limitations period, but Ft. James argued that there was "no proof that Burkes satisfies the statutory definition of a 'builder,' and, consequently, Burkes cannot rely on the limitations period of § 6-5-221(a)." *Id.* at 910-11. The court agreed with Ft. James:

> "A party claiming the benefits of a statute has the burden of establishing a sufficient factual basis to support invocation of the statute." *Wood v. Krenz*, 392 N.W.2d 395, 397 (N.D. 1986); *see also Geiger & Co. v. Hussey*, 63 Ala. 338, 342 (1879) ("whoever claims the benefits of [a] statute[ ] must bring himself within its provisions-must show affirmatively that he is of the class of persons, and has a [right] of the kind the statute intends to secure").
>
> In reply to Ft. James's contention that Burkes has presented no proof that it satisfies the definition of a "builder" at § 6-5-220(a), Burkes states: "Of course, Burkes Mechanical is a licensed Alabama general contractor, so this argument is incorrect." However, the "briefs of counsel, with the statements of their contentions, [are] not evidence in the case." *Fleming v. Copeland*, 210 Ala. 389, 391, 98 So. 128, 129 (1923). . . . ***The record contains no evidence of Burkes's status. Because Burkes has failed to satisfy its burden of showing it is entitled to the benefit of § 6-5-221(a), we hold that the claims of Ft. James are not barred by that statute of limitations.***

*Id.* at 911 (emphasis added).

As such, Wal-Mart has not carried its burden to show that there is ***no possibility*** "that [an Alabama] court would find that the Plaintiff[ has] stated a claim [against Dawes Lake that] is not barred by [§ 6-5-221(a)]." *Wright*, 136 F. Supp. 2d at 1212-13[14]; *see also Abrams*, 248 F.R.D. at 291 n.12; *cf. Legg v.*

---

[14]     Similarly, to be entitled to the benefit of § 6-5-221(a), the work performed by a statutorily-defined builder, such as Dawes Lake claims to be, must be "under the supervision, administration, or observation of an architect or engineer, or designed by and constructed in accordance with the plans and specifications prepared by an architect or engineer[.]" *Id.* In this regard, Roberts states, "All development work performed by Dawes

*Armstrong Int'l Inc.*, MDL No. 875, 2012 WL 7761497, at *1 (E.D. Pa. Nov. 29, 2012) (choosing not to "predict what the Supreme Court of Alabama would do" where the applicability of § 6-5-221 to claims of latent illness was not established).

Second, assuming Dawes Lake was a licensed general contractor during the appropriate time and its work was supervised by a statutorily-defined engineer—which, as *Burkes* instructs, a court ***cannot*** assume—the Court is without evidence to determine whether Dawes Lake was "the owner or the person in actual possession or control, in whatever capacity, of the improvement[, *i.e.,* Dawes Lake Trace, ]during the seven-year period after the substantial completion of construction of the improvement on or to real property[, that is, after December 12, 2005], but not at the time the cause of action accrues or arises[.]" ALA. CODE § 6-5-221(e). If it was, any such time is "not be computed as a portion of the time necessary to create a bar for the action or of relief by virtue of the passage of time after the substantial completion of the improvement." *Id.* For example, if after the claimed substantial completion date of Dawes Lake Trace, Dawes Lake was "the owner or person in actual possession or control, in whatever capacity, of" the

---

Lake, LLC[] was performed while acting in conformance with the instructions and under the supervision of an engineer or engineers." (Doc. 3-1, ¶ 6.) However, Dawes Lake has not shown that the aforementioned engineer(s) meets the statutory definition of an "engineer." *See* ALA. CODE § 6-5-220(c) (requiring in part that an "engineer," "at the time the engineering services were performed, [be] legally qualified to practice engineering and [hold] an unexpired registration as a professional engineer in the State of Alabama; [or], at the time the engineering services were performed, [be] legally qualified to practice engineering and [be] certified as an engineer-in-training in the State of Alabama; [or] any partnership, firm, or corporation which, at the time the engineering services were performed, [be] legally qualified to practice engineering and [hold] an unexpired certificate of authorization to practice engineering in the State of Alabama . . .").

development for only five months, the plaintiff's lawsuit would not be barred by the statute of repose.

Finally, although it appears that Wal-Mart's § 6-5-221(a) argument is premised on the seven-year statute-of-repose, it has also not been shown there is no possibility that an Alabama court would find that the plaintiff has stated a claim against Dawes Lake that is not barred by the two-year statute of limitations. Mr. Head's affidavit in support of the remand motion provides that the defendants' developments uphill from the plaintiff's property caused a "rain event" on June 9-10, 2012 to inundate a 14-acre manmade, spring-fed lake on the plaintiff's property, destroying that lake and its headwall and spillway. (*See, e.g.,* Doc. 17-1 at 2.[15]) For

---

[15]        In his affidavit, Mr. Head states in this regard,

Headwaters, LLC developed Headwaters subdivision, a 68 acre subdivision in Mobile County at the east end of Dawes Lake Road, on which subdivision exists a 14 acre lake which was a man-made lake constructed some 40 years ago. The lake is primarily spring-fed but, in rain events, due to the uphill subdivision, Dawes Lake subdivision, it receives and passes through water from that development, consisting of streets and impervious surfaces, as well as water from the uphill Wal Mart, which is developed at the corner of Dawes Road and Cottage Hill Road, causing the 14 acre lake to be inundated on June 9th and 10th, 2012, during a rain event.

Stormwater was discharged from the Wal Mart location and Dawes Lake subdivision into the lake at Headwaters, LLC, Headwaters subdivision, causing the lake and its headwall to be essentially destroyed due to the excess stormwater received. The earthen spillway was blown out and the entire structure was washed downhill.

Headwaters, LLC has incurred in excess of $300,000 to reconstruct the headwall and earthen embankments and spillway as a result of the stormwater which reached the lake in the June, 2012 rain event, which stormwater came from uphill developments consisting of the Wal Mart store, operated by Wal Mart, Inc. and Dawes Lake subdivision, developed by Dawes Lake, LLC.

(*Id.*)

purposes of fraudulent joinder, this affidavit satisfies the Court that the plaintiffs' claims against Dawes Lake are not foreclosed by § 6-5-221(a)'s two-year limitations period. *See, e.g., Atwood*, 2010 WL 749337, at *5-6.

### 3. A Rule 11-no evidence fraudulent joinder does not apply to this case.

In its response to the remand motion, Wal-Mart appears to convert its fraudulent misjoinder argument into one under Rule 11:

> Under the third prong in *Wright*, [fraudulent misjoinder,] plaintiff must make plausible allegations that the water that damaged its property originated from the properties owned or constructed by defendants Wal-Mart and Dawes Lake. The mere allegation that both are "uphill" from plaintiff, even if sworn, only makes plaintiff's claims theoretically possible. This is insufficient; as this Court has noted, "a mere ***theoretical*** possibility [of liability] will not prevent a conclusion of fraudulent joinder." *Nelson v. Whirlpool Corp.*, 668 F. Supp. 2d 1368, 1376 (S.D. Ala. 2009) (emphasis in original) (quoting *Legg*, 428 F.3d at 1325 n.5).

> While it is conceivable that water from Wal-Mart's store could eventually reach plaintiff's property, nothing in the complaint (as filed at the time of removal) explains how this occurs between non-contiguous properties. *Pacheco de Perez*, 139 F.3d at 1380. Water travels downhill, but there are numerous other properties uphill from plaintiff's property. Accordingly, plaintiff cannot know that the stormwater that damaged its property originated from properties owned or constructed by Wal-Mart and Dawes Lake. It is just as likely, if not more so, that the stormwater came from other adjacent properties.

> Given that plaintiff is alleging facts that do not lie within the plaintiff's possession, the *Nelson* case is a proper analogue to this case. . . .

(Doc. 23 at 2-3 (citations modified).)

In *Nelson*, the plaintiffs ***admitted*** that they sued a resident defendant, Clarke,

knowing nothing more than that Clarke supplied electricity to the residence. After suit was filed against Clarke, Lowe's and Home Depot, representatives of the plaintiff and these entities, plus Whirlpool, conducted a joint visual inspection of the site, which confirmed Whirlpool as the manufacturer and Lowe's as the seller but which—***as the plaintiffs' expert acknowledges***—contributed no evidence that Clarke was in any way responsible for the fire.

668 F. Supp. 2d at 1377 (footnote omitted and emphasis added).

And there, this Court, applying *Sellers v. Foremost Insurance Co.*, 924 F. Supp. 1116 (M.D. Ala. 1996),[16] ultimately found fraudulent joinder because (1) the plaintiffs' "position simply reveal[ed] that the possibility of linking Clarke to the fire is merely theoretical, not practical, and thus insufficient under *Legg*" and (2) "the plaintiffs did not perform an investigation reasonable under the circumstances before naming Clarke as a defendant." *Id.*

---

[16]    In *Sellers*, the court held that Rule 11 should govern "a fraudulent-joinder charge based on lack of evidence[.]" *Id.* at 1119. Under Rule 11, every time "a pleading, written motion, or other paper[ is presented to a court,] an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *Id.* (quoting FED. R. CIV. P. 11). "Therefore, to block a fraudulent-joinder charge based on lack of legal support, a plaintiff need only show that her claim against a resident defendant is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *Id.* In *Sellers*, however, there was no question the resident defendants, the Tablers, were fraudulently joined because, while it was

> undisputed that the Tablers sold Sellers a mobile home[, a]t oral argument, [ ] counsel for Sellers ***admitted*** that he had no evidence whatsoever that supports, or is likely to lead to evidence that supports, a viable claim against the Tablers. Indeed, the evidence in the record reflects that the Tablers were not present when the mobile home insurance policy was sold to Sellers, and thus the Tablers had nothing to do with Sellers's purchase of the policy.

*Id.* (emphasis added).

Here, however, the plaintiff has made no admission that he has "no evidence whatsoever that supports, or is likely to lead to evidence that supports, a viable claim against [Dawes Lake]." *Contra compare Sellers*, 924 F. Supp. at 1119, *with Nelson*, 668 F. Supp. 2d at 1377. And further, for purposes of the "basic" fraudulent joinder inquiry—which "must not subsume substantive determination[,]" *Crowe*, 113 F.3d at 1538, but rather, "is limited to checking for obviously fraudulent or frivolous claims[,]" *id.* at 1541-42—the undersigned cannot consider Wal-Mart's extensive argument (with citation to public records) regarding the effect of Halls Mill Creek as to flooding on the plaintiff's property in June 2012 and earlier problems with flooding on property adjacent to the plaintiff's property (Doc. 23 at 5-9). These arguments and evidence are better presented to the Circuit Court upon remand.

### III.   <u>Conclusion</u>

Because Wal-Mart has not shown that the resident defendant, Dawes Lake, has been fraudulently joined, the Court cannot disregard its citizenship for purposes of determining jurisdiction. Therefore, because complete diversity is lacking, this Court does not have subject matter jurisdiction under § 1332.

It is therefore **RECOMMENDED** that the motion to remand (Doc. 17) be **GRANTED** and that this matter be **REMANDED** to the Circuit Court of Mobile County, Alabama.

## IV.   Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.   *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4.   In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.   An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 5th day of August, 2013.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**